In the Matter of JUXBUSH REALTY CORP., Appellant, against TEMPORARY STATE HOUSING RENT COMMISSION, Respondent.

First Department, June 30, 1953.

238

*Samuel Taylor Permutt* of counsel (*Mandel & Permutt,* attorneys), for appellant.

*Beatrice Shainswit* of counsel (*Robert H. Schaffer,* attorney), for respondent.

DORE, J. P.   In this proceeding under article 78 of the Civil Practice Act to review a determination of the State Rent Commission, reversing a determination of the local rent administrator, permitting conversion of passenger elevators in an apartment building upon certain conditions, the State Rent Commission has taken the position as a matter of policy that when a landlord or his predecessor has obtained an increase in maximum rents pursuant to subdivision 5 of section 33 of the Rent and Eviction Regulations at a time when passenger elevators are being operated manually, the landlord or a successor, if the latter knew of the increase when he bought the premises, " must be presumed to have agreed to continue the manual operation of these elevators so long as the rent adjustment remains in effect."

Petitioner, landlord, Juxbush Realty Corp., purchased the premises known as 1140 Fifth Avenue, a fourteen-story apartment house, from the executors of the estate of Samuel Schustek, subject to an existing first mortgage held by East Side Fifth Avenue Corp., a prior owner.   The mortgage was made on November 30, 1951, by the prior owner.   Petitioner did not pur-

chase the premises until March 20, 1952. There is no evidence that petitioner had any interest in the property at the time the mortgage was made by the prior owner or that petitioner participated in the negotiations of the terms and provisions of the mortgage. One of the terms of the mortgage provided that $25,000 be paid in reduction of the principal sum unless conversion of the two manually operated passenger elevators into automatic be completed before November 30, 1953. Neither is there any evidence that this owner had any interest in the property or was connected in any way with the prior owner who requested an increase in rents because of financial hardship.

On June 10, 1952, about three months after acquiring title, this landlord made an application to convert the two manually operated elevators to automatic operation. The local rent administrator, after a hearing attended by representatives of a large number of tenants, granted the landlord's application on the following conditions:

(a) Twenty-four (24) hour lobby attendant service to be supplied by the landlord.

(b) An additional lobby attendant to be employed from 8 A.M. to 8 P.M. to assist children and invalids to and from the elevators.

(c) An intercommunication system to be installed and maintained by the landlord.

(d) The automatic elevators to operate between the ground floor and roof only.

(e) All work to be completed within two months after its commencement and all materials to be on hand prior to the actual commencement of the work.

(f) All essential services to be maintained.

Protests of this ruling were filed by only four of the forty-one tenants in the house and on such protests the State Rent Commission modified the order of the local administrator, eliminating all the above conditions except (e) and permitted conversion from manual to automatic elevators only on condition that the manual operators remained thereon.

This modification was made, as alleged, because an order dated September 24, 1951, pursuant to subdivision 5 of section 33 of the regulations of the Rent Administrator was made, which granted to the prior owner an increase of maximum rent based upon financial hardship. The Rent Commission in its order stated: " The Administrator is of the opinion that it would be contrary to the purposes of the Emergency Housing Rent

Control Law, as amended, and of the regulations, to grant a landlord adjustments in the maximum rents under Section 33(5), based upon financial hardship, and then subsequently to permit it to eliminate the service of elevator operators to run the passenger elevators.''

However, the application for the rent increase was made on April 12, 1951, by East Side Fifth Avenue Corporation, a prior owner that owned the premises prior to the vendor from whom petitioner purchased the property. There is no proof that Juxbush Realty Corp. was negotiating for the purchase of the property or had an interest in it at that time.

The State Rent Commission expressly relied on *Matter of Efef Associates* v. *McGoldrick* (281 App. Div. 673) as authority for the policy and the conclusion reached. That decision, however, was restricted to the unusual facts presented and does not have application to every case, where an increase in rent had been obtained. In the *Efef* case, this court was careful to point out that, on the particular facts disclosed, the State Rent Commission '' was justified in this case in holding that the rent increase was obtained under circumstances and upon representations which amounted to an undertaking by the landlord that the service of elevator operators would be maintained as long as the increase was in effect.'' No state of facts is here presented amounting to such an undertaking. On the facts herein disclosed there is no showing of misrepresentation or fraud or lack of good faith on petitioner's part, and the granting to the prior landlord of the increase should not per se be a bar to permitting conversion of manual to automatic operation without the added condition compelling the landlord also to retain manual operators. Each case of this sort must be decided on the state of facts presented therein and a general policy such as the Rent Commission has adopted with regard to conversion from manual to automatic operation of elevators applicable to all cases may not on the facts of this record be herein applied.

No application for an adjustment in rents based on the conversion of elevators was before either the local or the State Rent Administrator and consequently that issue is not presented.

As a practical matter it hardly seems sensible to permit conversion of elevators from manual operation to automatic operation in an apartment house such as this and simultaneously direct that the manual operators remain on the automatic elevators after conversion. As this court said in another elevator conversion case (*Matter of R. E. Associates* v. *McGold-*

*rick,* 280 App. Div. 202, 203) by its action the State Commission has thus '' effectively nullified petitioner's advantage from conversion and rendered conversion valueless.'' Except for protection purposes, of course the operators are superfluous; and protection for the tenants is fully provided for in the ample provisions for lobby attendants set forth in the local administrator's order.

The order appealed from should be reversed, without costs and the petition granted to the extent of reinstating the order of the local rent administrator.

CALLAHAN, J. (dissenting). I dissent and vote to affirm. The tenants of this building always had the services of elevator operators so that the case is unlike *Matter of 147 East 84th St. Corp.* v. *McGoldrick* (281 App. Div. 826) and resembles more closely *Matter of Efef Associates* v. *McGoldrick* (281 App. Div. 673). If a landlord obtains an increase in rents based on furnishing certain services, he and his successors in interest should not be permitted to eliminate these services without an appropriate adjustment in rents. Accordingly, the commission had the power to make the order involved herein.

BREITEL, J. (dissenting). I dissent and vote to annul the determination and to remit the matter to the Rent Commission for the purpose of adjusting the rent increases previously granted because of insufficient return on the property.

The fact is that this property is now returning a rental income increased solely on the basis of insufficiency in meeting the minimum return provided for by statute. True it is that the policy of the Rent Commission should not '' freeze '' inefficient methods of operation of residential buildings. But it is equally true that rents, justified only under the so-called '' hardship formula '', should not remain in effect, if, in fact, the hardship has been removed by eliminating services which were originally the basis for computing excess expenses. To permit any other practice simply means that all the effects of a fraudulent maneuver could be accomplished only because fraud in fact was not established. Moreover, the statute is not to be administered for the purpose of penalizing fraud but for the purpose of adjusting equities between landlords and tenants. Consequently, it is immaterial whether the ownership has remained the same, or whether actual fraud is proven. The commission has argued, and cogently, we submit, that if we require it to prove actual fraud before it can control the kind of conversion sought here, it will stimulate widespread abuse of the provisions of the

statute permitting rent increases for insufficient return on property. It is especially significant that the minimum return has been increased recently from 4% to 6%, thus widening the area of application for these statutory provisions.

I cannot agree that elevator operators are necessarily superfluous in automatic elevators. There still remains an element of protection in elevators while in transit, from intruders and others, in case of fire, and in connection with the mechanical operation of the elevators. On the other hand, there is a virtue of economy and efficiency in automatic elevators even when manned by operators. Some, if not most, of the largest buildings in this city, especially business buildings, have automatic elevators controlled by operators. The fact is that automatic elevators have a number of mechanical devices which render their operation more efficient and simpler than nonautomatic elevators, although both are controlled by operators. Indeed, the automatic elevator is a push-button machine of the twentieth century, reducing to a minimum the necessity for judgment and skill on the part of the operator, but not in practice always eliminating the operator.

For all of these reasons a remission of the matter to the Rent Commission provides the soundest handling. Thus the rents may be adjusted to prevent what would under many circumstances amount to a constructive fraud, and in general, would make actual fraud difficult, if not impossible, to discover.

COHN and BERGAN, JJ., concur with DORE, J. P.; CALLAHAN, J., dissents and votes to affirm in memorandum; BREITEL, J., dissents and votes to remit, in opinion.

Order reversed, without costs and the petition granted to the extent of reinstating the order of the local rent administrator.